UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA ALLEN,<br><br>      Defendant. | Case No.: 25-CR-139 (TSC) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

On November 10, 2021, police arrested defendant Joshua Allen for the murder of Delonte Johnson.[1] In a search incident to his arrest, a firearm with an extended magazine was found tucked into defendant Allen's compression shorts. At the time of his arrest, defendant Allen was on supervised release in the District of Columbia for an offense involving the possession and use of an illegal firearm.

On June 30, 2025, the defendant pleaded guilty to one count of Unlawful Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and one count of Possession of a Large Capacity Feeding Device in violation of 7 D.C. Code § 2506.01(b). This case is defendant Allen's sixth felony conviction and his third conviction for possessing a firearm in the District of Columbia. Despite multiple opportunities to change his behavior, the defendant has consistently reoffended—and continues to locate, procure, and possess illegal firearms. For the reasons stated below, the government respectfully requests that the Court impose a combined sentence of 50 months'

---

[1] Defendant Allen is charged in D.C. Superior Court with First Degree Murder While Armed (Premeditated), Assault with Intent to Kill While Armed, Aggravated Assault While Armed, Possession of a Firearm During a Crime of Violence, Unlawful Possession of a Firearm, and Carrying a Pistol Without a License in criminal case 2021 CF1 006416. Defendant Allen was subsequently charged in criminal case 2021 CF1 008134 with four counts of Obstruction of Justice for allegedly attempting to influence, intimidate, and/or impede a witness in his pending homicide case. Both cases were scheduled to go to trial on August 11, 2025, however, the trial was continued pursuant to a defense request. The new trial date is May 18, 2026. The defendant remains held pending trial.

1

imprisonment followed by three years of supervised release subject to the conditions and rehabilitation recommendations of the United States Probation Office.

## FACTUAL BACKGROUND

On November 9, 2021, a D.C. Superior Court Judge signed a warrant for the arrest of Joshua Allen for the homicide of Delonte Johnson. Mr. Johnson was killed on June 11, 2021. Members of the Capitol Area Regional Fugitive Task Force ("CARFTF") were assigned to locate and arrest defendant Allen.[2] The next day, on November 10, 2021, members of CARFTF located defendant Allen using location information obtained from his GPS ankle monitor, which he was wearing as a condition of his supervised release in 2010 CF2 004911. That case involved defendant Allen's illegal possession of a firearm. A member of CARFTF, saw defendant Allen sitting in the driver's seat in a white Ford Explorer near an apartment complex in Southeast D.C. and he was placed under arrest. In a search incident to his arrest, another CARFTF member, patted down defendant Allen and felt a solid object near or around his waist consistent in shape and composition of a firearm. The CARFTF member removed the object which was secreted between two pairs of compression shorts defendant Allen was wearing.

The object was a black, Glock 23 handgun that appeared to be fully functional, able to expel a projective by means of an explosion, had a barrel length of less than 12 inches and was capable of being fired with one hand.[3] The firearm had one round in the chamber and 12 rounds in the magazine, bearing serial number AAMB821. The firearm was manufactured in the United States and had been originally purchased in North Carolina in 2016.

---

[2] CARFTF is a regional task force that has partnership agreements with over 100 federal, state, and local agencies. In this case members of the task force included detectives with the Metropolitan Police Department and agents with the U.S. Marshal's Service. The CARFTF members in this case were specifically tasked with locating and arresting individuals with outstanding homicide warrants in the District of Columbia.

[3] This firearm was not connected to the Delonte Johnson homicide.

## **THE APPLICABLE LEGAL STANDARD**

Although the United States Sentencing Commission Sentencing Guidelines ("Guidelines") are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –(i) issued by the Sentencing Commission . . .; and (ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement – (A) issued by the Sentencing Commission . . . and (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

Similarly, a sentence under the District of Columbia Voluntary Sentencing Guidelines ("DCVSG") must: (1) reflect the seriousness of the offense and the criminal history of the offender; (2) provide for just punishment and afford adequate deterrence to potential criminal conduct of the offender and others; and (3) provide the offender with needed educational or vocational training, medical care, and other correctional treatment. D.C. Code § 24-403.01(a)(1-3); *accord* DCVSG § 1.1.2. To assure "adequate punishment," the Court must give due regard to the (a) seriousness

4

of the offense; (b) dangerousness of the offender; (c) need to protect the safety of the community; (d) offender's potential for rehabilitation; and (e) use of alternatives to prison, where appropriate. D.C. Code § 3-101 (establishing the District of Columbia Sentencing and Criminal Code Commission and directing it to implement voluntary sentencing guidelines aimed at achieving enumerated sentencing objectives); *see also* 18 U.S.C. §§ 3553(a)(1) & (2) (federal sentencing objectives).

"Highly relevant—if not essential—to [the sentencing court's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 247 (1949). The Court therefore has discretion to—and should—consider and weigh an array of factors about the defendant, including, but not limited to, character, remorse, acceptance of responsibility, offense-related conduct (including acquitted conduct), aggravating and mitigating factors, criminal history (both juvenile and adult), and prior performance on probation and parole, as long as those considerations are based on reliable evidence. *Saunders v. United States*, 975 A.2d 165, 167 (D.C.), *cert. denied*, 130 S. Ct. 815 (2009); *see also Wallace v. United States*, 936 A.2d 757, 780 (D.C. 2007) (same, noting that the sentencing court "may rely on evidence not admissible during trial") (internal quotation marks and citations omitted), *cert. denied*, 552 U.S. 1310 (2008); *Greene v. United States*, 571 A.2d 218, 220 (D.C. 1990) ("sentencing court may consider all the evidence presented at trial, including evidence of charges on which appellant was acquitted"). When evaluating all of these factors, the Court, "may conduct an inquiry broad in scope, largely unlimited as to the kind of information received and the source from which it is received." *Powers v. United States*, 588 A.2d 1166, 1169 (D.C. 1991). Accordingly, the Court "may consider a wide range of facts concerning a defendant's character and his crime." *Id.* (quoting *Barnes v. United States*, 529 A.2d 284, 288

5

n.5 (D.C. 1987)). The only limitations on sentencing considerations are "that a trial judge may not rely on mistaken information or baseless assumptions," *Wallace*, 936 A.2d at 780, and must not consider "race, gender, marital status, ethnic origin, religious affiliation, and sexual orientation." DCVSG § 1.1.6.

## THE APPLICABLE SENTENCING GUIDELINES

The Pre-Sentencing Report ("PSR") estimates defendant Allen's federal offense level to be 12 and his criminal history to be Category VI, yielding a Guidelines imprisonment range of 30 to 37 months' imprisonment. PSR at ¶ 82. Additionally, the PSR reflects a Guidelines range of one to 3 years of supervised release on Count 1. *Id.* at ¶ 89.

The PSR estimates defendant Allen's D.C. Code offense level to be Group 9 and his criminal history score to be category E, yielding a penalty range of nine months or more imprisonment or compliant long-split only. *Id*. at ¶ 83. This penalty, by statute, must run consecutive to any other sentence of incarceration. *See* D.C. Code §7-2507.06(4). Additionally, if a sentence of more than one year is imposed then the Court must impose a term of three years supervised release. ¶87. And multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

The government concurs with the calculation contained in the PSR.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence defendant Allen to 37 months' imprisonment on Count 1 to run consecutive to 13 months' imprisonment on Count 2, followed by three years of supervised release. This sentence—reflects the serious nature of this offense, defendant Allen's criminal history, and the fact that defendant was on release for similar conduct when he committed the instant offenses. The requested sentence provides adequate deterrence to

others in the community, particularly given the danger presented by individuals carrying loaded firearms with extended magazines.

A.     **The Nature and Circumstances of the Offense.**

Defendant Allen pleaded guilty to carrying a loaded firearm with an extended magazine secreted in his compression shorts. That alone is incredibly dangerous. *See United States v. Blackson*, 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023) ("Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community."). Moreover, at the time of his arrest, defendant Allen was in the driver's seat of a car. Thus, he was positioned to fully access to all quadrants of the city, all the while having a fully loaded firearm readily available and ready for immediate use. This combination of mobility and fast access to a firearm creates an inherent risk of danger to the community. This is particularly concerning given defendant Allen's history of possessing illegal firearms, his prior use of firearms, and his demonstrated inability to follow the orders of the Court.

B.     **The History and Characteristics of the Defendant.**

Defendant Allen has a significant criminal history, which includes convictions for violent armed offenses—Armed Carjacking and Assault to Commit Robbery While Armed, weapons offenses—Carrying a Pistol Without a License and Inmate in Possession of a Weapon, and repeated failures under supervision, including Prison Escape. His criminal history shows that he has not made the necessary efforts to ameliorate his behavior. Instead, he has demonstrated a preference to possess dangerous weapons and the ability to use those weapons against others. This presents a danger to himself and to others in the community.

Defendant Allen's first adult conviction was for Carrying a Pistol Without a License in case number 2008 CF2 013142. On March 20, 2009, the Court provided defendant Allen an opportunity for rehabilitation giving him a probationary sentence. Five months later, on September 24, 2009, defendant Allen was arrested for the Distribution of a Controlled Substance (Cocaine) in criminal case 2009 CF2 020810. *See* Government Exhibit 1. On September 28, 2009, that case was dismissed and defendant Allen was released. *See* Government Exhibit 2.

Rather than reflect on his behavior and while on probation for a gun offense in 2008 CF2 013142, defendant Allen's actions escalated towards violence. On October 6, 2009—after seven months of probation—defendant Allen was arrested in Prince George's County, Maryland for among other things, Armed Carjacking. During that offense, defendant Allen was not only armed with a firearm, but he used it to assault and carjack the victim. PSR at ¶ 28.

The following day, on October 7, 2009, the government reopened the dismissed drug case and indicted defendant Allen in 2009 CF2 020810 for the Distribution of a Controlled Substance (Cocaine).[4] A notice of arraignment was mailed to defendant Allen however, he failed to appear at his arraignment and a bench warrant for his arrest was issued. *See* Government Exhibit 3. Following his arrest on the bench warrant, on December 16, 2009, defendant Allen was ordered to a halfway house pending trial. *See* Government Exhibit 4. Less than 10-days later, defendant Allen left the halfway house without authorization and never returned. *See* Government Exhibit 4.

On March 20, 2010, while defendant Allen was on escape status in 2009 CF2 020810 and under supervision in 2008 CF2 013142 as well as on pre-trial release in his Maryland carjacking case, he was arrested for attempting to rob two victims and shooting one of the victims in the leg.

---

[4] The case was reopened under the same case number following the October 7, 2009 indictment.

8

PSR at ¶30. Defendant Allen again choose to arm himself while in the community. And he continued his spiral towards violence and this time he shot the victim twice in the leg. PSR at ¶30. To his credit, defendant Allen took responsibility for his behavior and pleaded guilty. Ultimately, he was convicted and sentenced for Armed Carjacking, Assault with Intent to Rob While Armed, Assault with Intent to Rob, and Prison Escape.[5] Despite taking ownership for his actions, defendant Allen continued to violate the rules while incarcerated. Even while serving a sentence, he sought out and possessed a dangerous weapon, that is a shank while in prison. PSR at 31. As a result, in 2019, he pleaded guilty to Inmate in Possession of a Weapon in 5:19-cr-00103.

On October 6, 2020, defendant Allen was released from custody. He remained on supervision in 2010 CF2 004951 (Prisoner Escape) and 2010 CF2 004911 (Assault with Intent to Commit Robbery While Armed). Despite having prior experience being on release in the community and knowing the consequences for failing to abide by the conditions of his release, defendant Allen again decided to find and obtain an illegal firearm. Moreover, he chose an even more powerful firearm than he had possessed in the past by virtue of having a large capacity feeding device.

Defendant Allen's history is incredibly consistent. Within months of being in the community, he finds and possess firearms. He has not shown the Court that he has learned from his past mistakes. Rather, his fixation on having a firearm while in the community and his capacity to use the firearm against others make him a danger to others.

C.      **Unwarranted Sentencing Disparities.**

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the

---

[5] The Distribution of a Controlled Substance (Cocaine) in 2009 CF2 020810 was dismissed as part of his plea agreement.

sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

According to the U.S. Sentencing Commission's Judiciary Sentencing Information, during the last five years:

> During the last five fiscal years (FY2020-2024), there were 947 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 12 and a Criminal History Category of VI, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 930 defendants (98%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 31 month(s) and the median length of imprisonment imposed was 30 month(s). For all 947 defendants in the cell, the average sentence imposed was 30 month(s) and the median sentence imposed was 30 month(s).

*See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited September 25, 2025).

Here, the Government's request is above the median and mean. This is warranted considering the facts surrounding defendant Allen's arrest: (1) his status on supervision at the time of the offense, (2) where he hid the firearm making it readily accessible for his use, (3) his ability to move around the city quickly by virtue of being the driver in a car, and (4) the large capacity

10

feeding device making the weapon especially dangerous. Moreover, a sentence above the median and mean is justified given defendant Allen's criminal history and past conduct. He has not demonstrated that he appreciates the inherent danger that a firearm presents. The government requests a high-end guideline sentence of 37 months for Count 1 that accounts for defendant Allen's persistent actions and the multiple steps he took to locate, purchase, and possess an illegal firearm despite knowing that he was prohibited from having it. The government requests a consecutive 13-month sentence for Count 2, which considers the one round in the chamber and 12 rounds in the magazine that the defendant loaded despite knowing that he was not permitted to have a firearm while he was on supervised release.

D.     **The Need for the Sentence Imposed.**

The requested sentence is sufficient but no greater than necessary to meet the goals of sentencing. Despite his many felony convictions, defendant continues to illegally possess firearms and put the community at risk. Prior periods of incarceration and periods of supervision have done little to deter him. The requested sentence provides specific deterrence: it will keep the community safe from defendant Allen and give him an opportunity to reconsider and rehabilitate his behavior. It provides general deterrence: it will signal to the community that the possession of illegal firearms is a serious matter and hopefully deter others from doing so. The requested sentence of 50 months' incarceration is a reasonable one.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court impose a combined sentence of 50 months of incarceration followed by three years of supervised release.

                                                    Respectfully submitted,

                                                    JEANINE FERRIS PIRRO
                                                    United States Attorney

By:                /s/ *Sarah C. Santiago*
                                                    Sarah C. Santiago
                                                    GA Bar No. 724304
                                                    Assistant United States Attorney
                                                    601 D Street NW
                                                    Washington, D.C. 20530
                                                    202-252-7249
                                                    sarah.santiago2@usdoj.gov